Chancellor James
delivered the decree of the court as follows:
This case differs from that heretofore decreed between *252 the executor of J. Drayton, and the creditors of Glen Drayton, in one circumstance only, and that is, with re,-spect to the bond in question of Dr. Chanler, for complain-had obtained judgment and execution, andtheexecution was levied on the property in Glen Drayton’s possession, in May,’92, prior to the delivery of the bond to him. It is to be observed that Chanler’s bond formed no part of the security for the debt jn the first instance, and was considered in no other light than merely as a collateral security when received, according to complainants own statement ; because though it amounted to nearly as much as Glen Drayton’s debt, it was not taken in payment 'or satisfaction, for the judgment and execution still subsisted to be enforced at the pleasure of the complainant. The conduct of the defendants has been arraigned for delivering up this bond to Glen'Drayton as his property, thereby giving it a currency,'whereby complainant was induced to forbear enforcing his execution, and recovering his debt. If there appeared the smallest tincture of fraud in the defendants conduct, the court would lay hold of it to make them personally responsible for this debt: but when it is considered that the division of their testators estate was first made during the invasion of this country by the British, when ho man could call his property his own one moment; that itwas then made evidently for the benefit of all concerned: That every thing continued in á state of 'confusion for several years afterwards — when it is considered that defendants looked on the propeity as their own when they made the division, but had. misconceived their rights-; and it was not until some years after when their mistake was corrected by a decree of this court': When all these circumstances combined together are considered, they weigh strongly with the court not to make the defendants personally responsible; The first part of their conduct being justifiable, and the second in a great measure excusable. Besides a custom had too commonly prevailed, and in some instances had been sanctioned by the court, of dividing estates among the heirs and devisees before the debts *253 ,were satisfied. The inconvenience of such a practice has been seen by the court, and severely felt by creditors, and we trust will never occur again. Complainant states that he forbore to enforce his execution on the appeal of Glen Drayton’s friends, and in consideration of this bond being deposited with him. Defendants in their answer positively deny they ever made the appeal set forth, and complainant has not proved they did; and so far from countenancing his parting with the bond, they wished and en-deavoured to get it back again to secure themselves. As to complainants enforcing his execution, he would have ■been prevented from selling as well as the other creditors of.Glen Drayton, who were restrained by injunction.
ft has been urged that the court in the former decree had favored the defendants, by setting aside the sale they had made of testators lands, which would prejudice their individual creditors ; and it may eventually prove so. The reasons however, which are given by the court in their decree, evidently shew that the interest of defendants was not at all the obje.ct of that decree, but to make a legal distribution of testators estate, and set aside a sale not authorized by his will. If in so doing, a prejudice has arisen to the creditors of one of the legatees, it cannot be avoided : the will of the testator from whom the estate was derived must be complied with. The court are disposed to do all they can consistently with the principles of justice and equity for complainant’s relief; but they are of opinion that they would violate those principles, in making-defendants personally responsible for Glen Drayton’s debt, seeing that they have already suffered considerably by his misconduct. As the house however still remains the property of the estate, and G. Drayton was entitled to a fourth part of the reversion in it, the court will order that the reversion in the house be sold, and the one fourth part of the amount sales thereof be paid over to the complainant,